UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NATHAN L. SWANSON, JR., | ) | |
| | ) | |
| *Petitioner*, | ) | Case No. 3:21-cv-383 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| BERT BOYD, | ) | Magistrate Judge McCook |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

A grand jury indicted Petitioner, a convicted felon, on various state criminal charges that arose out of (1) a violent incident between Petitioner and his girlfriend; (2) police finding a controlled substance for which Petitioner did not have a prescription and $1,100 in cash on Petitioner; and (3) police finding a gun in Petitioner's car. *State v. Swanson*, No. E2019-00830-CCA-R3-CD, 2020 WL 5268250, at *1–4 (Tenn. Crim. App. Sept. 4, 2020), *perm. app. denied* (Tenn. Jan. 14, 2021) ("*Swanson*"). Four days before his trial on some of these charges was set to begin, Petitioner pled guilty to "attempted possession of a firearm by a felon, aggravated kidnapping, aggravated assault, and possession of a Schedule IV controlled substance with the intent to sell" and received an effective sentence of fourteen years. *Id.* at *1. Petitioner, now a state prisoner, filed a pro se petition for habeas corpus relief under 28 U.S.C. § 2254 challenging these convictions by asserting that his guilty plea was not knowing and voluntary and his counsel provided ineffective assistance in various ways [Doc. 1], that is now before the Court. Respondent filed a response in opposition to the petition [Doc. 8] and the state court record [Doc. 7]. Petitioner did not file a reply, and his time for doing so has passed [Doc. 5 p. 1].

After reviewing the parties' filings and the state court record, the Court finds that Petitioner is not entitled to relief under § 2254, and no evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Accordingly, the habeas corpus petition [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

## I.    BACKGROUND

After the trial court denied Petitioner's motion to withdraw his guilty plea, Petitioner appealed his convictions to the Tennessee Court of Criminal Appeals ("TCCA"), which described Petitioner's underlying criminal proceedings as follows:

> On April 10, 2018, [Petitioner] was indicted for two counts of unlawful possession of a firearm having been convicted of a felony, and one count each of simple possession of a controlled substance, driving a vehicle with a suspended license, failure to provide evidence of financial responsibility while driving a car, and driving a car without a brake light. *See* Tenn. Code Ann. §§ 39-17-418, 39-17-1307, 55-9-402, 55-12-139, 55-50-504. On the same day, [Petitioner] was indicted for two counts of unlawful possession of a firearm having been convicted of a felony, one count each of especially aggravated kidnapping, aggravated assault, domestic assault, and theft of property valued at $1,000 or less. *See* Tenn. Code Ann. §§ 39-13-102, 39-13-111, 39-13-305, 39-14-103, 39-17-1307. Two weeks later, on April 24, 2018, [Petitioner] was indicted for alternative counts of possession with intent to sell a Schedule IV controlled substance and possession with the intent to deliver a controlled substance. *See* Tenn. Code Ann. § 39-17-417.
>
> On August 16, 2018, [Petitioner] pled guilty to attempted possession of a firearm by a felon, aggravated kidnapping, aggravated assault, and possession of a Schedule IV controlled substance with the intent to sell. [Petitioner] was subjected to a lengthy and detailed plea hearing, during which the State read the following stipulated facts:
>
>> The testimony would be that on October 22, 2017, [Petitioner] and his girlfriend, [the victim], had gotten into an argument because she did not have her identification, so they were not allowed entry into a club in the Old City.
>>
>> When they returned to her apartment, [Petitioner] became angry, yelled at [the victim], "You don't know how to shut up," and

2

[Petitioner] head-butted [the victim]. [The victim] then attempted to run to the neighbors to call an ambulance [because] she couldn't see, but [Petitioner] chased her down, grabbed her by the arm and started kicking and hitting her. [Petitioner] then drug her back into the apartment.

Once [the victim] was in the apartment, [Petitioner] jumped on top of her and held her down while hitting her all over her body with different objects, including an ashtray. When [Petitioner] stopped hitting her, he went outside to his vehicle, at which time, [the victim] retrieved [her handgun] in order to protect herself. When [Petitioner] came back in the apartment, he took the firearm from her and he began beating her with [the gun].

[The victim] did suffer multiple injuries that resulted in her admission to the hospital. She had a collapsed lung and multiple broken ribs.

[Testimony] from [Knoxville Police Department] Officer Adam Broome [would be] that [he] was attempting to serve the warrants [for the above charges] on October 25, 2017, at Davenport Road.

While serving [Petitioner], [officers] took him into custody, did a search incident to arrest, discovered a clear plastic baggie containing 17 green, rectangular pills with the mark SD3, identified as Alprazolam, 2 milligrams, in his front right pocket. [Petitioner] also had $1,110 in U.S. currency, in denominations consistent with the sale of narcotics.

[Petitioner] admitted to Investigator Broome that he did not have prescriptions for the Alprazolam. The packaging and cash were consistent with possession with intent to sell or deliver.

[O]fficers with the Knox County Sheriff's Office[] [were] behind [Petitioner] [when] they noticed he was driving a vehicle with a brake light out. A check through Knox County revealed that [Petitioner] was operating a vehicle on a suspended license. [Petitioner] was also unable to provide insurance. [A] K9 partner, Zack, [sniffed] around the vehicle. The K9 did alert on the vehicle. Search incident to that alert located a black Beretta .22-caliber handgun, with one round in the chamber and five rounds in the magazine underneath the driver's seat. [Petitioner] was the only

3

> occupant of that vehicle. [Law enforcement] also found marijuana in the vehicle.

The court informed [Petitioner] of the various punishment ranges he could have been subjected to if he would have continued to trial and been convicted of the original charges. Additionally, the court informed [Petitioner] of the effects of his guilty plea, including credit for time served, percentage to be served before release eligibility, and information concerning parole. The court continued with great detail informing [Petitioner] of his right to a jury trial and confirmed that [Petitioner]'s plea was knowing and voluntary and the decision was solely his to make. [Petitioner] received an effective agreed-upon sentence of fourteen years as a Range I offender.

On August 27, 2018, [Petitioner] filed a pro se motion to withdraw his plea and subsequently, on March 26, 2019, appointed counsel filed an amended motion which also included a claim of ineffective assistance of counsel as a basis to withdraw his guilty plea. [Petitioner]'s motion to withdraw hearing was held on April 11, 201[9].

[Petitioner] testified that he pled guilty because he "was scared to be prosecuted for a crime that [he] didn't commit." [Petitioner] asserted that his trial counsel "pretty much said" that if he did not take the plea deal that was offered, "the [district attorney] would refer [his] case to the feds, pretty much guaranteeing" that he would be sentenced to fifteen years or more in federal prison. As part of the plea agreement, [Petitioner] did receive a release from federal prosecution.

[Petitioner] testified that trial counsel informed him that not all of his charges would be tried at the same time. [Petitioner] asserted that trial counsel told him that "if [he] was prosecuted for the state [charges, his] maximum amount of time could be up to forty-one years" and that his federal charges "could've been fifteen or more, which would've guaranteed [him] pretty much life in prison." Trial counsel had also informed [Petitioner] that there was a possibility that his charges could be sentenced consecutively.

[Petitioner] testified that in preparation for trial, counsel never gave him a "straight answer as far as how or what" sort of defenses would be presented. [Petitioner] asserted that he was not guilty of the felon in possession of a firearm offense because he did not know the gun was in his car on the night he was arrested; his father had left the gun in the car on a previous occasion, according to [Petitioner]. [Petitioner] told trial counsel that he believed the gun to be his father's, and trial counsel "said that she would speak with [his father] when she had a chance." [Petitioner] did not know if trial counsel ever spoke with his father.

4

[Petitioner] testified that he received police reports, a medical report concerning the victim, and the victim's statements as discovery in his case. Trial counsel informed [Petitioner] that further discovery existed on discs, but [Petitioner] asserted he was never able to view this discovery.

[Petitioner] believed trial counsel met with him twice to discuss [Petitioner]'s case. During the first meeting, trial counsel did not discuss any defenses that may have been used in [Petitioner]'s case. The two discussed the assault, the kidnapping, and details of who owned the car. Additionally, during this meeting, [Petitioner] informed trial counsel that at the time of the incident, he had sustained hand injuries that "could possibly [have proven] that [he] was unable to commit the said acts of the crime that [he] was charged with." [Petitioner] explained that he had "a fractured left hand and [ ] a fractured bone and a broken bone in [his] right hand." His right hand was in a cast at that time. [Petitioner] asked trial counsel to "get those reports from the hospital" as evidence of his hand injuries. [Petitioner] did not believe trial counsel obtained those reports.

[Petitioner] denied kidnapping or assaulting the victim. [Petitioner] had explained to trial counsel that while he and the victim were arguing, the victim jumped on his back and "was trying to strike" him with a liquor bottle. [Petitioner] grabbed the victim with his left hand and "was trying to pretty much shake her off of [him]." [Petitioner] testified that he "fell on top of [the victim]" and that because of the size difference, an injury may have resulted to the victim.

During the second meeting with trial counsel, [Petitioner] was shown some black and white photographs that were "hard for [him] to really be able to see anything." Trial counsel stated that she would show him better images on a disc. [Petitioner] received the police reports and hospital records at this meeting. [Petitioner] asserted that he informed trial counsel that he wanted to go to trial.

[Petitioner] testified that he had actually met with trial counsel a third time to discuss a plea offer from the State. At this meeting, trial counsel told [Petitioner] that the plea offer "was something that [he] should really think about." [Petitioner] asserted that he told trial counsel that he was "not comfortable with taking a plea deal." [Petitioner] was "afraid of not taking the plea deal after the information that [trial counsel] had given [him]" regarding the state and federal charges. [Petitioner] asserted that he could have been found not guilty of those charges he pled guilty to.

On cross-examination, [Petitioner] agreed that his case was set for trial on August 20, 2018, four days after he pled guilty, and that he had the opportunity to proceed if he desired. [Petitioner] testified that he signed a waiver of rights and had reviewed the waiver in-depth with the trial court on the day of his plea hearing.

5

[Petitioner] agreed that he indicated at the hearing that he understood his waiver of rights, that he was guilty of all the charges, and that he was satisfied with counsel on the day of the plea hearing. [Petitioner] also agreed that he had heard the State's stipulated proof at his hearing. [Petitioner] was aware that he had been permitted to plead to the lesser-included offense of attempted possession of a firearm by a convicted felon and that the court could have sentenced him consecutively.

[Petitioner] identified a document that trial counsel had prepared showing each charge against [Petitioner], the possible sentencing range for each charge, and the declination to prosecute from the federal government. [Petitioner] acknowledged that trial counsel had reviewed this document with him and that [Petitioner] understood the information. [Petitioner] denied telling trial counsel that he would accept a plea offer for fourteen years, instead, [Petitioner] averred that he told counsel he would "rather it be less [than fifteen years and] more specifically towards [ ] ten [years]." Nonetheless, [Petitioner] agreed that he owned the marijuana found in the car, that he had possession of sixteen Alprazolam pills without a prescription, and that he was carrying $1,100 in cash upon his arrest.

Trial counsel testified that she was appointed to represent [Petitioner] at the time of his arraignment. Soon after being appointed, trial counsel met with [Petitioner] to discuss his charges and asked the court for a furlough so that [Petitioner] could attend a funeral. Trial counsel obtained discovery from the State and shared the information with [Petitioner]. Trial counsel could not recall if she brought her laptop to view the discovery contained on discs, but she "thought [she] brought [it] at least once[.]" Additionally, she described all of the discovery to [Petitioner].

Trial counsel discussed plea negotiations with [Petitioner] and believed [Petitioner]'s case "was a little bit trickier than normal because [Petitioner] [was] also charged in Hamblen County on an aggravated child abuse case . . . [so these charges were] mandatory consecutive to the Hamblen case." Trial counsel received an initial offer of eighteen years from the State, but she was instead able to negotiate a ten-year sentence to be served at one-hundred percent and a five-year sentence to be served at thirty percent, for an effective sentence of fifteen years.

Upon speaking to [Petitioner] about the fifteen-year offer, [Petitioner] told trial counsel that if a fourteen-year offer was made, he would accept. Trial counsel was able to negotiate a fourteen-year sentence if [Petitioner] agreed to a plea hearing the following day.

Trial counsel had spoken with [Petitioner]'s mother and his "father said the gun was his, and was willing to come and testify[.]" However, trial counsel explained that the State's plea offer was "a global offer" and it "was all or nothing."

> [Petitioner] accepted the plea offer, and trial counsel testified that [Petitioner] did not indicate that he wanted to go to trial at that time.
>
> On cross-examination, trial counsel asserted that she met with [Petitioner] "more than three" times. According to trial counsel, she and [Petitioner] "had talked about possibilities going forward on defenses [to [Petitioner]'s charges]." Trial counsel testified that the defense against [Petitioner]'s aggravated kidnapping charge would be "to call [the victim's] credibility into question when she testified." However, trial counsel had concerns with [Petitioner]'s taking the stand "given his criminal history." Trial counsel had consulted with [Petitioner] regarding the victim's credibility and her presentation to a jury, and [Petitioner] thought it was "likely that [the victim] would [have been] believed [by the jury]."
>
> Trial counsel recommended that [Petitioner] take the fourteen-year offer due to a multitude of factors including [Petitioner]'s opinion that the victim would seem credible to a jury, the victim's connections to federal law enforcement, and [Petitioner]'s Hamblen County aggravated child abuse case. Trial counsel testified that she would have been prepared to go to trial.
>
> The trial court filed an order on April 25, 2019, wherein it found that [Petitioner] did not prove a manifest injustice occurred when he pled guilty. The court found that at no time during his plea hearing did [Petitioner] express a desire to go to trial nor did he express dissatisfaction with trial counsel. Additionally, the court found that the stipulated proof offered by the State was compelling. The court denied [Petitioner]'s petition for relief. This timely appeal followed.

*Swanson*, at *1–4. The TCCA affirmed the trial court's denial of Petitioner's motion to withdraw his guilty plea, *id.*, at 6, and the Tennessee Supreme Court denied review [Doc. 7-10].

Petitioner next filed the instant § 2254 petition.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a federal court to grant habeas corpus relief on any claim adjudicated on the merits in a state court only where that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

7

This Court may grant habeas corpus relief under the "contrary to" clause where the state court (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) decide[d] a case differently than the Supreme Court on a set of materially indistinguishable facts." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). The Court may grant habeas corpus relief under the "unreasonable application" clause where the state court applied the correct legal principle to the facts in an unreasonable manner. *Id.* at 407.

But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold") (citing *Williams*, 529 U.S. at 410). Rather, this Court may grant relief for a claim decided on its merits in state court only where the state court ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### III.  ANALYSIS

The Court will address Petitioner's claim challenging his guilty plea before addressing his remaining claims for ineffective assistance of counsel.

#### A.  Plea

Petitioner first claims that he entered his guilty plea "unknowingly or involuntarily due to ineffective assistance of counsel" [Doc. 1 p. 5]. In support of this claim, he states that "[his] attorney failed to properly advise him of the consequences of pleading guilty," and that, in the time he spent with his attorney, she seemed to try to intimidate him "into pleading guilty," even though "[he] may have had a defense to at least two of the [charges to which he pled guilty]" based on hospital records showing his injuries at the time of the crimes [*Id.*].

In its opinion affirming the trial court's denial of Petitioner's motion to withdraw his guilty plea, the TCCA addressed this claim as follows:

> Generally, a defendant who submits a guilty plea is not entitled to withdraw the plea as a matter of right. *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The decision to allow the withdrawal of a guilty plea is within the discretion of the trial court and may not be overturned on appeal absent an abuse of discretion. *Henning v. State*, 201 S.W.2d 669, 670 (Tenn. 1947); *State v. Davis*, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). Although not explicitly listed in our Rules of Appellate Procedure as an appeal as of right provided under Tennessee Rule of Appellate Procedure 3, our supreme court has held that a defendant may appeal the denial of a motion to withdraw a guilty plea. *See State v. Peele*, 58 S.W.3d 701, 703 (Tenn. 2001) (holding that a direct appeal lies from the denial of a Rule 32(f) motion under Tennessee Rules of Criminal Procedure).
>
> Rule 32(f) of the Tennessee Rules of Criminal Procedure governs the withdrawal of a guilty plea prior to the judgment becoming final. According to the rule, a trial court may permit the withdrawal of a guilty plea upon a showing "of any fair and just reason" before it sentences the defendant. Tenn. R. Crim. P. 32(f)(1). Once the defendant is sentenced and before the judgment becomes final, however, a trial court may permit the withdrawal of a guilty plea only "to correct manifest injustice." *Id.* 32(f)(2).
>
> Trial courts and appellate courts must determine whether manifest injustice exists on a case-by-case basis. *See State v. Crowe*, 168 S.W.3d 731, 741-42 (Tenn. 2005); *Turner*, 919 S.W.2d at 355. To determine whether the defendant should be permitted to withdraw his guilty plea to correct manifest injustice, a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the plea submission process under Tennessee Rule of Criminal Procedure 11(b) facilitates an inquiry into the existence of manifest injustice. *See generally State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987) (for rules concerning acceptance of guilty pleas). Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice when (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea. *State v. Thomas Lester Campbell*, No. E2008-02751-CCA-R3-CD, 2009 WL 2567872, at *5-6 (Tenn. Crim. App. Aug. 20, 2009).
>
> In addressing manifest injustice, "a Defendant's change of heart about pleading guilty" will not support the withdrawal of a guilty plea on this basis. *State v. Phelps*, 329 S.W.3d 436, 445 (Tenn. 2010) (quoting *State v. Crowe*, 168 S.W.3d

9

731 (Tenn. 2005)). In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. *Wade v. State*, W2017-01042-CCA-R3-PC, 2019 WL 259118, at *3 (Tenn. Crim. App. Jan. 17, 2019).

In its order, the trial court denied [Petitioner]'s motion to withdraw his guilty plea, as a manifest injustice had not occurred and a correction was not needed. The court specifically referenced that at [Petitioner]'s plea hearing, the court spent an "inordinate amount of time" and went into "much greater detail than the law requires" when it accepted [Petitioner]'s guilty plea. Additionally, during this hearing, "at no point did [Petitioner] express his dissatisfaction with his attorney, nor a desire to go to trial." The court credited trial counsel's testimony that [Petitioner] did not "express[ ] a desire to go to trial." Moreover, the court found that the "evidence of the [Petitioner's] guilt in each case [was] compelling" when referencing the State's stipulated proof at the plea hearing. The court found that [Petitioner] "faced significantly more exposure had he gone to trial(s) and been convicted within each of these cases. The court found that [Petitioner] entered his plea consciously, knowingly, and voluntarily.

At the hearing to withdraw the plea based upon ineffective assistance of counsel, trial counsel testified that [Petitioner] did not indicate that he wanted to go to trial after accepting the fourteen-year plea agreement. Trial counsel testified that [Petitioner] believed that the victim would seem credible to a jury and that trial counsel had concerns with [Petitioner]'s testimony based upon [Petitioner]'s previous criminal history. Although trial counsel could not recall specifically taking her laptop to show [Petitioner] the discovery that was contained on discs, she did provide him with paper copies of available discovery and described all other discovery to him. During multiple meetings, she discussed defenses to [Petitioner]'s charges, including a strategy to attack the victim's credibility and to argue that [Petitioner] did not know his father's gun was in his car. She asserted that she would have been prepared for trial but for [Petitioner]'s acceptance of a plea agreement.

[Petitioner] testified that he had signed the plea agreement and that he had stated in court he did so consciously, knowingly, and voluntarily. Additionally, [Petitioner] acknowledged that he did not testify at his plea hearing that he wanted to go to trial nor that he was dissatisfied with counsel.

We conclude that the trial court did not abuse its discretion by finding that [Petitioner] had not proven that a manifest injustice occurred. The court found that [Petitioner] was incredible and credited trial counsel's testimony that she adequately investigated [Petitioner]'s charges and was prepared for trial. [Petitioner] has failed to establish that a manifest injustice occurred. Accordingly, we do not find any merit in [Petitioner]'s ineffective assistance claim. The court properly denied [Petitioner]'s motion.

10

Case 3:21-cv-00383-CEA-JEM   Document 9   Filed 11/29/22   Page 10 of 14   PageID #: 339

*Swanson*, at *5–6.

Under federal law, a guilty plea must be entered into knowingly, intelligently, and voluntarily to be valid. *Brady v. United States*, 397 U.S. 742, 748 (1970). The Court looks to the totality of the circumstances to establish "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. at 747); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *North Carolina v. Alford*, 400 U.S. 25 (1970). The totality of the circumstances must show that the plea was voluntary, and that the petitioner was informed of the relevant circumstances surrounding his plea and all the direct consequences of his plea. *Brady*, 397 U.S. at 755; *Stumpf v. Mitchell*, 367 F.3d 594, 609 (6th Cir. 2004). A petitioner's representation of voluntariness at his guilty-plea hearing carries a strong presumption of veracity and constitutes "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

When a petitioner challenges his guilty plea in federal proceedings, the respondent must demonstrate that the plea was voluntary and intelligent, which is usually accomplished by producing a transcript of the plea proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The district court presumes that a state court's finding that a plea was proper is correct, unless the transcript is inadequate to support that the plea was voluntary and intelligent. *Id.* at 326–27. The record must "leave[] [no] doubt as to whether the plea was in fact intelligent and voluntary." *Stumpf*, 367 F.3d at 600; *Boykin*, 395 U.S. at 242.

The record leaves no doubt that Petitioner's guilty plea was knowing, intelligent, and voluntary. Specifically, the record establishes that, at Petitioner's plea agreement hearing, the following events, among other things, occurred: (1) the prosecution explained the plea agreement and Petitioner's sentencing exposure for the charges against him; (2) the court explained to Petitioner that his guilty plea must be free and voluntary, that he was waiving his right to confrontation and compulsory process, that he had the right to remain silent, and that the guilty plea waived his right to trial and appeal, before finding Petitioner competent to plead guilty and

11

his guilty plea knowing and voluntary; and (3) before pleading guilty, Petitioner stated that no one had forced, pressured, or threatened him to make him plead guilty, that his attorney had gone over the plea agreement with him, that he was satisfied with his attorney, and that he understood his rights and had no questions [Doc. 7-4 p. 2–22].

Thus, while Petitioner asserts in his § 2254 petition that his trial counsel failed to advise him regarding the consequences of his guilty plea, the record does not support such a finding, as Petitioner acknowledged under oath that his counsel had gone over the plea agreement document, which specified the consequences of the guilty plea, with him [*Id.* at 13; Doc. 7-5 p 5[1]]. Additionally, the record reflects that, at the guilty plea hearing at which Petitioner was present, the prosecution and the court described the consequences of Petitioner's guilty plea in detail prior to Petitioner pleading guilty, and that Petitioner therefore knew those consequences [Doc. 7-4 p. 4–22]. Further, while Petitioner states in his petition that his counsel seemed to try to intimidate him into pleading guilty, he stated at his plea agreement hearing that no one had forced, pressured, or threatened him in a manner that made him plead guilty [*Id.* at 12]. This solemn representation carries a lot of weight, *Blackledge*, 431 U.S. at 73–74, and Petitioner's general assertions of intimidation by his counsel are insufficient to overcome it.

Moreover, the record demonstrates that, due to his plea agreement, the sentence Petitioner received was substantially less than the sentence he could have received at trial. Additionally, with his plea agreement, Petitioner received an agreement that the federal government would not prosecute him for additional criminal charges. These circumstances further support the Court's

---

[1] While this document states that Petitioner would receive an effective sentence of fifteen years, the record demonstrates that his counsel ultimately was able to obtain an agreement that Petitioner would serve an effective sentence of fourteen years, pursuant to Petitioner's request [Doc. 7-3 p. 47–48].

12

Case 3:21-cv-00383-CEA-JEM   Document 9   Filed 11/29/22   Page 12 of 14   PageID #: 341

finding that Petitioner's decision to plead guilty, rather than go to trial, was a voluntary and intelligent choice.

In short, the totality of the circumstances, including Petitioner's own testimony at his plea agreement hearing, demonstrate that Petitioner's guilty plea was free and voluntary. Thus, the record supports the TCCA's finding that Petitioner's guilty plea was knowing and voluntary, and Petitioner has not established that this holding was an unreasonable determination of the facts in light of the evidence presented, or an unreasonable application of federal law.[2] As such, Petitioner is not entitled to habeas corpus relief for this claim.

### B. Remaining Claims

Petitioner also claims that his counsel was ineffective in various ways [Doc. 1 p. 7–12]. However, Petitioner's guilty plea bars him from pursuing any claim except "'the court's jurisdiction and the voluntary and intelligent character of the plea itself'" under both federal and Tennessee law. *Kremer v. Erdos*, 1:20-CV-00194, 2022 WL 1227282, at *2 (S.D. Ohio April 26, 2022) (citing *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) and *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). As such, the Court will not address the substance of these claims.

### IV. CONCLUSION

---

[2] Notably, as set forth above, the TCCA did not cite federal law in affirming the denial of Petitioner's motion to withdraw his guilty plea. *Swanson*, at *5–6. But it is apparent that both the TCCA's reasoning and ultimate decision are consistent with the federal law applicable to this claim. As such, the fact that TCCA did not cite or explicitly rely on federal law does not entitle Petitioner to § 2254 relief. *Early v. Packer*, 530 U.S. 3, 8 (2002); *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006) (providing that "[t]he state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them" and "it is sufficient that the result and reasoning are consistent with Supreme Court precedent") (citing *Early*, 530 U.S. at 8).

13

For the reasons set forth above, the petition for § 2254 relief [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may issue only where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right and thus a COA should issue. *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484.

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his claim challenging his guilty plea, nor would reasonable jurists debate the correctness of the Court's dismissal of his remaining claims, such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**